## Case No. 8,009a.

### LAMB v. BRIAND.

[See Case No. 8,010.]

---

## Case No. 8,010.

### LAMB v. BRIARD.

[Abb. Adm. 367;[1] 14 Betts, D. C. MS. 34.]

District Court, S. D. New York. Dec., 1848.

SEAMEN'S WAGES — DISCHARGE IN FOREIGN PORT —CONSENT OF SEAMAN—CONSUL'S CERTIFICATE.

The certificate of a consul of the United States in a foreign port, under the act of July. 1840 [5 Stat. 394], that the discharge of a seaman was granted upon the seaman's consent, is conclusive upon that fact, unless it is shown that the conduct of the consul was corrupt or fraudulent.

[Cited in Callon v. Williams, Case No. 2,324; Coffin v. Weld, Id. 2,953; The Paul Revere, 10 Fed. 158.]

This was a libel in personam, filed by James Lamb against William A. Briard. master of the ship Far West, to recover wages. The libel stated that the respondent shipped the libellant, as steward, on board the Far West, in February, 1848, at New Orleans, for a voyage to Europe and thence back to some port in the United States, at $20 per month; that shipping articles were signed; that libellant entered upon the service of the ship, February 10, 1848, about which time she sailed for Europe; that on the arrival of the vessel at Havre, the mate sent the libellant on shore to prison, and on his release from prison the master, having hired a new steward, refused to permit him to return to his duty on board ship; that libellant applied to the American consul for redress, and being informed by the consul that the master was very vindictive against him, he quitted the ship, which soon after sailed, leaving him at Havre, where he was detained, at his own expense, three weeks. The libel claimed to recover wages for the entire voyage, and the expenses incurred by him at Havre, amounting in all to $51.35. The answer stated that on the outward voyage, and while the ship was in port at Havre, the libellant was disobedient, interfering at the last in a turbulent manner to prevent the discipline of the ship from being carried on; that he was, on account of this conduct, put in prison; that the 'respondent immediately thereupon laid the case before the American consul, who

[1] [Reported by Abbott Brothers.]

took the case wholly into his hands, caused the libellant and other disobedient members of the crew to be brought before him, and reprimanded them and ordered them to return to their duty; that they all did return, except the libellant, who requested his discharge; that the respondent consented to his being discharged, and that the consul certified the libellant's discharge on the shipping articles, paid him his wages, computed at $20.86, and took his receipt for that sum in full. The shipping articles, the receipt given by the libellant, and the certificate of discharge, were produced and duly proved upon the hearing.

Alanson Nash, for libellant.

F. S. Stalknecht, for respondent.

I. The consul had full power to discharge libellant in Havre. The act of 1840 (chapter 48, §§ 5, 6,) gives discretionary power to consuls to discharge a mariner at a foreign port, upon the application of master and mariner.

II. All the requirements of the act were complied with by the consul. The consul, Jones, and the second mate testify that libellant requested to be discharged. It is also admitted that respondent subsequently united in the request, assigning as reasons therefor that Lamb was incompetent, insolent, and disobedient. The proper entry was also made upon the list of the crew and the shipping articles.

III. The discharge was, therefore, primâ facie right and proper. But it will be sought to set it aside on the ground that Lamb was coerced to ask for his discharge by being imprisoned, and by a threat to bring him home in irons. Doubtless he was induced by these considerations to wish to leave the ship; but if the imprisonment was proper, and caused by his disobedient and mutinous conduct, and his discharge was necessary to preserve the discipline and safety of the ship, this court will uphold it. "Discharges given with due deliberation and full explanation of circumstances, should not be set aside on light grounds." Thorne v. White [Case No. 13,989]. Final discharges and compromises, on due consideration, should be upheld. Per Peters, J., in Harden v. Gordon [Id. 6,047]. The cases all concede that the right to imprison exists though there must be sufficient cause. Abb. Shipp. 179. In U. S. v. Ruggles [Case No. 16,205], it was decided that in case of mutiny the right to imprison exists.

IV. A review of the facts in this case shows that the imprisonment of the libellant was not only justifiable, but necessary.

V. As to the libellant's claim for his expenses in Havre, there is no proof of the time he was there, or of the amount of his expenses. The presumption is that he shipped on board of another vessel, as he assured the consul he could easily obtain another ship.

VI. A distinction is also made in the books

between the power to discharge a seaman and a steward. In the case of Black v. The Louisiana [Case No. 1,461], it was decided that if a steward is found to be incompetent, the master can discharge him. It is in evidence that Lamb was not only insolent and disobedient, but also incompetent to discharge his duties as steward.

VII. Further, the general principle of maritime law is, that a seaman may forfeit his wages by gross offences. Lamb certainly was guilty of gross offences, such as constitute a forfeiture.

BETTS, District Judge. The suit is obviously an experimental one, seeking to establish a right to wages upon the testimony of two shipmates, against the official acts of the United States consul at Havre, certifying the discharge of the libellant to have been by mutual consent on his part, and on that of the master of the ship, and with the approval of the consul.

[The prosecution must have been accompanied with heavy expense, as, in addition to the ordinary costs of an admiralty suit, a commission has been executed in France to bring in the testimony of the consul and his chief assistant.] [2]

Previous to the act of 1840, a seaman who deliberately and voluntarily took his discharge from a vessel in the course of the voyage, lost all claim to a continuance of wages, and the courts were disposed to countenance such discharges when it appeared that there were reasonable grounds for them. Harden v. Gordon [Case No. 6,047]; Thorne v. White [Id. 13,989]. The act of February 28, 1803 [2 Stat. 203], however, in cases of discharge of seamen abroad, by mutual consent, compelled the master to pay the consul at the port three months' wages, as an indemnity to the United States against the support of the seamen and his passage home. The act of July 20, 1840 (articles 5, 6, § 1) conferred upon the United States consuls power to discharge absolutely mariners from vessels, on the joint application of both the master and the men, without requiring payment of three months' wages, when, in the judgment of the consuls, it was expedient; or the consuls were authorized to impose such terms for the indemnity of the United States, as they might deem proper.

The evidence is full to show that in this case the consul personally examined into the matter. He had the master with the libellant and others of the crew before him, and decided that the libellant might be discharged. This was accordingly done—both his own consent and that of the master being also given. A certificate of the fact that the libellant was discharged by his own consent is entered upon the articles under the hand and seal of the consul, who, moreover, gives his testimony on deposition to the same effect.

It is further proved, by the assistant of the consul, that the respondent paid into the consulate $20.86, the balance of wages due the libellant, and that the libellant received the money and signed a receipt therefor, therein stating, also, that he had been discharged at his own request, and with his free will, and that the sum paid was in full of the wages due him, and of all demands against the ship. This receipt is annexed to the commission, and is authenticated by the consular seal, and proved by the deposition of the assistant.

This is evidence of the most satisfactory character, that the rights of the seaman were duly cared for and protected, and it relieves the court from all those doubts which not unfrequently hang over the propriety of discharges abroad, granted at the instance of mariners alone.

Manifestly, congress had in view the importance of placing over the conduct of masters and sailors the supervision of a public functionary, who should control these matters in subordination to the interest of the mariner and of the United States. This was also regarded as a sufficient check to improvident discharges, without the penalty of three months' wages being imposed. The actions of consuls under the provisions of the statute are, therefore, if not absolutely conclusive as to the facts that the discharge was by the consent and free will of the mariner and to his benefit, at least of force to overbalance the mere assertions and opinions of shipmates and other bystanders, however numerous they may be. Indeed, it is doubtful whether evidence could be received on the part of the libellant, impeaching the validity of the certificate and official act of the consul, unless it amounted to proof of fraud or plain dereliction of duty on his part.[3]

[4] [The libellant examined two of his shipmates, and cross-examined the witnesses called by the respondent, to prove that he was coerced or terrified into a consent to his discharge, by the threats of the master and consul that if he came home in this ship it should be in irons. And also that the libellant was then a prisoner in the jail at Havre, where he had been arbitrarily committed by the first mate without color of cause.

[The two mates and carpenter, on the contrary, testified the libellant was imprisoned because of disobedience to the explicit orders of the mate. The second mate swears that the libellant called all hands at the time to go ashore, and said, "Men do not do any more (on the ship), but go ashore with me." There was also proof of disrespectful and insubordinate language used by the libellant on other occasions during the voyage to the captain.

[The consul testifies that, before the libel-

[3] In respect to the requisites of a valid consular discharge and certificate, see The Atlantic [Case No. 620], decided February, 1849.

lant was imprisoned, repeated complaints had been made at his office by the officers of the ship of the insubordinate and mutinous conduct of some of the crew, and the libellant was pointed out as the instigator of it. He and others of the crew were several times before the consul, and were admonished by him. He particularly enjoined on the libellant the necessity of amending his conduct, as he seemed more refractory than the rest, and manifested much violence of temper on one or two occasions at the consulate.]

[The master applied for the libellant's discharge because, if received back in the ship, he said he should take him home, in irons, and the consul in presence of the libellant approved that determination. These are supposed to be the threats which cowed or intimidated him to ask his discharge.]

[It is unnecessary to consider whether the application of a sailor for a discharge under the apprehension that he was to be subjected to imprisonment and hard usage on ship board where innocent of any offence might be regarded as negativing his free consent to the discharge.] [4] For in my opinion, there is prima facie evidence in this case sufficient to justify the master in confining the libellant and bringing him home as a mutinous and insubordinate seaman. And, furthermore, in my judgment, the decision of the consul, rendered upon an inquiry made on the spot into the allegations on both sides, and in presence of the parties, must, in a fair interpretation of the act of congress, be regarded as final in this particular, unless the conduct of the consul be shown to have been corrupt or fraudulent.

The mischiefs of the old system were, that men were often compelled by the severe conduct of the master, or seduced by his connivance, to abandon the vessel abroad, to the great injury and oppression of the seamen themselves, and under circumstances tending to deprive the United States of their after services; and also that seamen were often kept on board in violation of their shipping contracts. The act of 1840 interposed the official supervision of consuls in the matter, referring it to them to determine when a seaman might be released from the vessel, on the mutual consent of himself and the master, and in what cases he might be entitled to a discharge because of the violation of the shipping contract on the part of the master.

The statute has provided no means of reviewing the determination of consuls in these matters, either on behalf of seamen or of masters, and accordingly they must be considered final, unless given under circumstances rendering them void in toto.

I hold, in the present case, that there is no foundation for the action, and that the libel must be dismissed with costs.

Decree accordingly.

[4] [From 14 Betts, D. C. MS. 34.]